IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CATHERINE B.,<br>Plaintiff, | §<br>§<br>§ | |
| v. | § | No. 7:25-CV-102-BW |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | §<br>§<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Catherine B. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for Supplemental Security Income ("SSI") under Title XVI of the Act. (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c), and the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(b). (*See* Dkt. Nos. 5, 9.)

Plaintiff filed a brief on appeal (Dkt. No. 14) ("P. Br."), to which the Commissioner filed a brief in response (Dkt. No. 19 ("D. Br.")), and Plaintiff filed a reply brief (Dkt. No. 20) ("Reply"). After considering the pleadings, briefs, and administrative record, the Court finds that the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

On January 28, 2022, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning March 16, 2021, due to high blood pressure, hearing problems in both ears, broken left ankle with two major surgeries, degenerative disc disease, and anemia. (*See* Transcript ("Tr.") 245-51, 290.) The claims were denied initially on September 29, 2022, and again on reconsideration on August 31, 2023 (Tr. 113-46), after which Plaintiff timely requested an administrative hearing (Tr. 147-48).

On April 30, 2024, Administrative Law Judge Diana Erickson ("the ALJ") held a telephonic hearing, at which Plaintiff appeared and testified and was represented by Jeff Sullivan, an attorney. (Tr. 14.) Janice Hastert, an impartial vocational expert, also appeared and testified. *Id*. The ALJ issued an unfavorable decision on September 27, 2024, finding Plaintiff not disabled. (Tr. 14-24.) On July 21, 2025, the Appeals Council denied Plaintiff's request for further review. (Tr. 1-6.) The ALJ's April 30, 2024 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## II. LEGAL STANDARDS

### A. District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*,

67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witness credibility, and this Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*,

706 F.3d 600, 603 (5th Cir. 2012)). "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id*. (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## B. The Sequential Evaluation Process

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)). On the first four steps of the analysis, the claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482

U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id*. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then she is not disabled. *Id*. If an individual's impairment precludes her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III. ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her April 30, 2024 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.
2. The claimant has not engaged in substantial gainful activity since March 16, 2021, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
3. The claimant has the following severe impairments: chronic pain syndrome, obesity, rheumatoid arthritis, and posttraumatic arthritis from left tibial fracture status/post ORIF (20 CFR 404.1520(c) and 416.920(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant can perform sedentary work, as defined in the regulations,[1] except she cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, stoop, balance, kneel, crouch, and crawl. The claimant can tolerate only occasional exposure to vibration and hazards such as exposed heights and moving mechanical parts. The claimant can only occasionally reach overhead and can frequently reach other directions. The claimant can no more than frequently handle and finger (404.1567(a) and 416.967(a)).

6. The claimant is unable to perform past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 11, 1974, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2021, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-24.)

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits, protectively filed on January 28, 2022, the claimant is not disabled under §§ 216(i) and 223(d) of the Act. (Tr. 24.) The ALJ also determined that based on the application for supplemental security income protectively filed on January 28, 2022, the claimant is not disabled under § 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## IV. ANALYSIS

Plaintiff asserts a single point of error, contending that the RFC finding was not supported by substantial evidence because the ALJ determined that Plaintiff could sustain a specific modified range of sedentary work without identifying or obtaining proper medical evidence that supported the limitations assessed. (*See* P. Br. at 1, 12-17.) Relatedly, Plaintiff contends that the ALJ failed in her duty to fully and fairly develop the record. (*Id.*)

The Commissioner argues in response that the ALJ was not required to base the RFC finding on a medical opinion and properly formulated Plaintiff's RFC by assessing the medical evidence and other relevant evidence such as Plaintiff's own statements and her reported activities. (*See* D. Br. at 3-8.) Further, argues the Commissioner, the ALJ was not required to develop the record because the ALJ had sufficient facts to render an informed decision regarding Plaintiff's RFC. (D. Br. at 7-8.)

After considering the pleadings, briefs, and administrative record, the Court finds that the ALJ properly considered the entire record, including the medical

opinion evidence and treatment records showing normal physical examinations and left ankle imaging, normal strength throughout all lower and upper extremities, and normal range of motion, as well as Plaintiff's reports of her daily activities, and the ALJ's RFC assessment was supported by substantial evidence. Furthermore, Plaintiff has not shown that the ALJ needed to further develop the record by obtaining additional medical evidence, or that she was prejudiced by the ALJ's alleged failure to do so.

**A. The ALJ's RFC finding was supported by substantial evidence.**

RFC is what an individual can still do despite her limitations. Social Security Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional factors to be considered, and it is based on all the relevant evidence in the case record. *Id.* at 3-6. The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record. 20 C.F.R. § 404.1546(c); *see also Villa v. Sullivan*, 895 F.2d 1019, 1023 (5th Cir. 1990). Further, the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that she did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

As the ALJ noted, Plaintiff alleged disability mainly due to degenerative disc disease, osteoarthritis in her neck, hypertension, and left ankle pain. (*See* Tr. 19.) After careful consideration of the evidence, the ALJ found that Plaintiff's statements

regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (*See id.*) *See* SSR 96–7p, 1996 WL 374186, at *2 ("whenever the individual's statements . . . [regarding her] symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An "ALJ's findings regarding the debilitating effect of the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986).

Here, the ALJ properly considered the totality of the evidence in assessing Plaintiff's RFC. (See Tr. 18-21.) First, the ALJ noted that Plaintiff has a history of open reduction internal fixation ("ORIF") on her left tibia and fibula. (Tr. 19, 430.) The ALJ also noted that Plaintiff had a normal physical examination in March 2021, and a physical examination in August 2023 showed no change in the position of her hardware, but Plaintiff had a calcaneal spur. (Tr. 19, 379, 440.) The ALJ also noted that Plaintiff has "Class III" obesity, which "can further limit postural and exertional abilities," and accordingly limited her to sedentary work. (Tr. 19, 599, 795.)

During an August 2023 consultative examination, Plaintiff's gait was antalgic, she had difficulty walking on her heels and toes, but she could tandem walk; she had normal 5/5 strength throughout all upper and lower extremities, including her finger abduction and grip; had normal range of motion throughout lower and upper extremities, aside from left flexion and abduction; and had good range of motion in her back and hips. (Tr. 19-20, 435-38.)

In October 2023, Plaintiff requested consultation for possible removal of her surgical hardware. (Tr. 20, 568.) She was later diagnosed with post-traumatic arthritis of the left ankle. (Tr. 20, 648.) The ALJ explained that based on this finding, Plaintiff was limited to sedentary work, minimizing the amount of time that she must stand or walk; she can never climb ladders, ropes, or scaffolds; and due to her neck pain, Plaintiff can only occasionally reach overhead and can frequently reach other directions. (Tr. 20.) The ALJ also noted that Plaintiff's normal physical examination, including normal range of motion strength and 5/5 in her lower left extremity, shows that she can perform this work. (Tr. 20, 650.)

In addition, the ALJ noted that Plaintiff reported in November 2023 that she had not seen a doctor for some time, which the ALJ reasonably found indicated that Plaintiff was managing her symptoms for much of the relevant period without treatment, and her symptoms were more manageable than she has alleged. (Tr. 20, 581.) The ALJ also noted that in January 2024, Plaintiff reported that she was getting good relief from her podiatry visit and ankle injections, further supporting the ALJ's conclusion that Plaintiff had the ability to perform sedentary work. (Tr. 20, 662.)

In February and March 2024, Plaintiff reported knee pain, primarily on the right; but on examination, she had normal range of motion throughout her body. (Tr. 20, 793, 819-20.) The February 2024 record notes that Plaintiff had an initial rheumatology assessment in January 2024 due to joint pain and swelling along with chronic pain syndrome features and a positive ANA rheumatoid factor, though the

record states these findings were due to other contributing factors. (Tr. 20, 809-12.) Based on these records, the ALJ determined that Plaintiff could only occasionally stoop, balance, kneel, crouch, crawl, and climb ramps and stairs and tolerate only occasional exposure to vibration and hazards such as exposed heights and moving mechanical parts. (Tr. 20.)

The ALJ also considered Plaintiff's allegations of difficulty using her hands. (Tr. 20.) In October 2023, she reported numbness in her left fourth and fifth fingers. (Tr. 20, 485.) In February 2024, Plaintiff reported ongoing hand and finger symptoms associated with significant stiffness, but a hand x-ray showed no acute abnormalities or evidence of rheumatoid arthritis. (Tr. 20, 811.) To address these symptoms, the ALJ included in the RFC that Plaintiff could handle and finger no more than frequently and limited Plaintiff to lifting and carrying at the sedentary exertional level. (Tr. 20.)

In addition to reviewing the medical evidence, the ALJ also reviewed other relevant evidence such as Plaintiff's statements and reported activities. (Tr. 20, 433.) *See* 20 C.F.R. § 416.929(c)(3)(i) (daily activities a relevant factor in evaluating symptoms); *see also Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995) ("It is appropriate . . . to consider the claimant's daily activities when deciding the claimant's disability status."). Plaintiff reported doing household chores, caring for her children, doing laundry, washing dishes, and driving. (Tr. 20, 433.) As the ALJ explained, these activities are consistent with lifting, carrying, pushing, pulling, standing, and walking at the sedentary exertional level and support the finding that

Plaintiff has the ability to frequently reach in all directions but overhead. (Tr. 20.) The ALJ further explained that driving shows that Plaintiff can frequently handle and finger, as she has to grasp the steering wheel, operate her gear shift, turn and grasp her keys, and initiate other driving necessities like windshield wipers. (*Id.*) Plaintiff also testified that she sometimes babysits her grandchildren, whose ages range from 5 to 10, and cooks, activities that the ALJ reasonably concluded further support Plaintiff's ability to lift and carry at the sedentary level, as well as to frequently handle and finger. (Tr. 20, 43-44, 58.)

The ALJ also considered the medical opinion evidence of record. (Tr. 20-21.) Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claims on January 22, 2022, and therefore, the 2017 regulations are applicable to her claims.

Under these revised regulations, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 416.920c. To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff, specialization, and other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are supportability and consistency. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When considering medical opinions, the ALJ

"will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Stephens v. Saul*, 3:20-CV-823-BH, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted).

The ALJ must also explain the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). An ALJ will discuss how she considered the supportability and consistency factors for a medical source's medical opinions in her determination or decision. *Id.* "At a minimum, the ALJ's discussion [of these factors] must give enough reasons to permit meaningful judicial review." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citations omitted).

First, the ALJ considered the opinion of state agency medical consultant Dr. Phillip Matar, who reviewed Plaintiff's file on reconsideration, and found Plaintiff capable of medium work with standing and walking limited to three hours. (Tr. 21, 88-90.) The ALJ, however, did not find Dr. Mator's opinion persuasive, noting that although the opinion was supported by citations to Plaintiff's normal muscle strength and range of motion, it was inconsistent with Plaintiff's complaints of ankle pain. (Tr. 21, 97.)

The ALJ next considered the opinion of consultative medical examiner Dr. Copper Tye. (Tr. 21, 432-37.) Dr. Tye's only specific functional limitation was that Plaintiff does not need an assistive device for short or long distances but needs a cane

on uneven terrain. (Tr. 21, 437.) The ALJ found this assessment "generally persuasive" as it was supported by Dr. Tye's examination and consistent with Plaintiff's ability to walk to catch the bus, as well as clinical findings on her gait, strength, and range of motion. (*Id.*) Plaintiff complains that the ALJ "rejected" Dr. Tye's cane limitation (*see* P. Br. at 14), but the ALJ explained that an assistive device was not included in the RFC because the record did not support regular need for an assistance device, and the RFC limits Plaintiff to sedentary work and restricted climbing of ladders. (Tr. 21.)

Finally, the ALJ considered the opinion of Dr. Brian Hull, Plaintiff's treating physician. (Tr. 21.) Dr. Hull opined that Plaintiff could sit for four hours, stand/walk for one hour, and occasionally lift less than ten pounds. (Tr. 21, 442, 473.) Dr. Hull also opined that Plaintiff would miss work several times monthly. (Tr. 21, 443, 473). The ALJ did not find Dr. Hull's opinion persuasive, explaining that it was not consistent with the record, including Plaintiff's activities of daily living. (Tr. 21, 43-44, 58, 432.) The ALJ also noted that Dr. Hull was not Plaintiff's primary care provider, he did not support his opinion with reference to specific treatment records or symptoms, and his examination of Plaintiff did not support the extensive limitations opined. (Tr. 21, 624.)

Plaintiff argues that because the ALJ "rejected as 'unpersuasive' the medical opinions of [Dr. Matar and Dr. Hull]," "there was no remaining persuasive medical opinion evidence upon which to rest any RFC findings." (P. Br. at 15.) But the Plaintiff overlooks that the ALJ found Dr. Tye's opinion "generally persuasive," and

although Plaintiff takes issue with the ALJ's "rejection" of Dr. Tye's cane limitation (*id*. at 13), the ALJ reasonably explained why she did not include an assistive device limitation in Plaintiff's RFC. (*See* Tr. 21.) Thus, the ALJ's RFC findings were not "improperly based [ ] on the ALJ's own unqualified lay interpretation of the raw medical evidence" as Plaintiff argues, nor was the ALJ precluded from reviewing and evaluating the objective medical evidence. (*See* P. Br. at 13-15.) *See Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) ("It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" (citing *Taylor*, 706 F.3d at 603; SSR 96-8p, 1996 WL 374184, at *8 n.4 (an RFC assessment is an administrative finding of fact); *see also Barrett v. Barnhill*, 906 F.3d 340, 343 (5th Cir. 2018) ("[E]xperienced ALJs can draw their own conclusions based on accurate medical information."); *Hernandez v. O'Malley*, No. 5:23-CV-1403, 2025 WL 899971, at *3 (W.D. Tex. Feb. 27, 2025) (explaining the difference between objective medical evidence, which an ALJ is authorized to interpret, and raw medical data, which he is not); *Moore v. Saul*, No. 3:20-CV-161, 2022 WL 987735, at * 3 (N.D. Miss. Mar. 31, 2022) (explaining that "raw medical evidence" refers to evidence that does not permit "common-sense judgments about functional capacity" and instead requires the ALJ to "overstep the bounds of a lay person's competence and render a medical judgment") (citing *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990)).

Here, the ALJ did not independently opine on the medical tests, scans, and physical exams, and their effects, but rather relied on physicians' interpretations of

those tests, scans, and exams. *See Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023) (unpublished) (finding ALJ "did not improperly draw medical opinions from raw data but properly examined the extensive medical documentation"). Furthermore, as previously explained, there is no requirement for the ALJ's RFC findings to exactly mirror or match a medical opinion. The ALJ's role is to evaluate and synthesize all the medical and non-medical evidence in the record to arrive at the RFC findings. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); *see also* SSR 96-8p, 1996 WL 374184 at *5. The ALJ did that in this case.

**B. The ALJ was not required to further develop the record.**

Plaintiff also argues that the ALJ should have further developed the record regarding her RFC. (P. Br. at 16.) The ALJ has a duty to fully develop the record when evaluating an applicant's claim for disability benefits. *Ripley*, 67 F.3d at 557. That duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). The Fifth Circuit has described the duty to fully and fairly develop the record as requiring that the ALJ reach "an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). Here, the ALJ had sufficient facts to render an informed decision regarding Plaintiff's RFC. Considering the evidence, which included Plaintiff's statements regarding her

activities and physical examination reports showing normal strength and essentially normal range of motion throughout, the ALJ reasonably found that Plaintiff was limited to a reduced range of sedentary work. (Tr. 19.)

Plaintiff relies on *El Neil v. Comm'r of Soc. Sec.*, No 4:23-CV-473-BP, 2024 WL 265870, at *6 (N.D. Tex. Jan. 24, 2024), to support her argument that further development of the record was warranted in this case. (*See* P. Br. at 15-16.) Plaintiff asserts that *El Neil* is "analogous" because the ALJ found unpersuasive the medical opinions of record and did not identify or obtain any alternative medical opinion, which the court determined left the RFC unsupported by substantial evidence. (*Id.* at 15 (citing *El Neil*, 2024 WL 265870, *3).) But the facts in *El Neil* are readily distinguishable from the present case, as the court's finding was based on the ALJ's failure to consider mental limitations in the RFC after assessing non-severe mental impairments at step two. *El Neil*, 2024 WL 265870, at *3, *5 (finding that because "[t]he record does not clearly establish the effects of [the claimant's] mental impairments on her ability to work," the ALJ's mental RFC assessment was not supported by substantial evidence); s*ee Alicia Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) (noting that when an ALJ finds mental limitations are credible at steps two and three but does not include any discussion of them at later steps, the ALJ must explain "why [s]he omitted any mental limitations from the residual-functional-capacity formulation"). Such is not the case here.

Plaintiff does not allege that the ALJ erred because she found some of Plaintiff's impairments to be non-severe and left out limitations based on those non-

severe impairments. Rather, Plaintiff complains that the ALJ found Dr. Matar's and Dr. Hull's opinions unpersuasive (Tr. 21), while finding Dr. Tye's opinion "generally persuasive," even though the only specific functional limitation assessed was that Plaintiff needed a cane for walking on uneven terrain (*id.*). (*See* P. Br. at 15.) As discussed above, however, the decision indicates that the ALJ properly considered the required factors of supportability and consistency, and the Court finds no error in the ALJ's evaluation of these opinions. (Tr. 21.) *See* 20 C.F.R. § 404.1520c. Thus, considering the evidence discussed above, the Court concludes that the ALJ had sufficient facts to render an informed decision regarding Plaintiff's RFC. *See Brock*, 84 F.3d at 728; *Kane*, 731 F.2d at 1219.

Furthermore, "[t]he Fifth Circuit has held that 'the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete.'" *A.G. v. O'Malley*, No. 3:24-CV-266-S-BR, 2024 WL 4137269, at *3 (N.D. Tex. Aug. 13, 2024) (citing *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005)); *Martinez v. Comm'r of Soc. Sec.*, SA-22-CV-912-ESC, 2023 WL 5278018, at *6 (W.D. Tex. Aug. 15, 2023) (quoting *Ripley*, 67 F.3d at 557); *see also Blubaugh v. Comm'r of Soc. Sec.*, No. 6:22CV397-JDK, 2024 WL 4327459, at *6 (E.D. Tex. July 27, 2024), *adopted*, 2024 WL 4212323 (E.D. Tex. Sept. 16, 2024) (rejecting the claimant's contention that the ALJ's RFC determination was flawed because it was allegedly based on the ALJ's own unexplained lay interpretation of the medical data); *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8

(W.D. Tex. Sept. 3, 2021) (explaining that an ALJ is not required to have a medical opinion that matches his RFC determination).

Finally, Plaintiff has not made a showing that any prejudice resulted from the ALJ's alleged failure to develop the record. *See Brock*, 84 F.3d at 728-29. Reversal for the ALJ's failure to adequately develop the record is only required if the claimant shows prejudice. *Ripley*, 67 F.3d at 557. "A mere allegation that additional beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden" of demonstrating prejudice. *McCamant v. Comm'r, SSA*, No. 4:20-00212, 2021 WL 3603462, at *6 (E.D. Tex. Aug. 13, 2021) (quoting *Jones v. Astrue*, 691 F.3d 730, 735 (5th Cir. 2012)). Based on the foregoing, Plaintiff failed to show that the ALJ needed to further develop the record and that she was prejudiced.

Under the applicable substantial evidence standard, whether it might be possible to evaluate evidence differently or possibly even reach a different conclusion is immaterial. *See* 42 U.S.C. § 405(g). The Fifth Circuit has held that for there to be a finding of no substantial evidence, there must be "a conspicuous absence of credible choices or no contrary medical evidence." *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983) (internal quotations and citation omitted). Such is not the case here. Plaintiff has failed to demonstrate either that improper standards were used to evaluate the evidence or that the final decision was not supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on September 3, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE